2014 DEC -2 PM 1:06

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Divison

Case No. 3:14CV1453-J-34JBT

The United States of America
and the State of Florida *ex rel.*
AMY SANCHEZ,

                                   **FILED *IN CAMERA***
                                   **UNDER SEAL**

    Plaintiff/Relator,

                                   **JURY TRIAL DEMANDED**

vs.

SMART PHARMACY, INC.,
GREGORY H BALOTIN,
WILLIAM C. SCROGGINS and
CONNIE MOHRMAN

    Defendants.
_____/

## QUI TAM COMPLAINT
### PURSUANT TO 31 U.S.C. §§ 3729-3732
### OF THE FEDERAL FALSE CLAIMS ACT

Relator, Amy Sanchez, through counsel, brings this *qui tam* action under 31 U.S.C.§3729, *et seq.*, as amended (False Claims Act) to recover damages, penalties and other remedies established by the False Claims Act on behalf of the United States, the State of Florida and herself.

### I. PRELIMINARY STATEMENT

1. This action is brought on behalf of the United States pursuant to the False Claims Act, 31 U.S.C. sections 3729, *et seq* and on behalf of the State of Florida pursuant to the Florida False Claims Act, Fla. Stat. §68.081, *et seq.*

2. This action concerns false and fraudulent claims for payment that the Defendants submitted and caused to be submitted to Medicare. The Defendants routinely and intentionally submitted false and fraudulent claims for payment to the government for services conditionally covered by the Medicare Program, the Medicaid Program and the TRICARE Program, submitted false reports and made false statements, all as more fully described below. These submissions were made with the intention of having Medicare, Medicaid and/or TRICARE pay Smart Pharmacy, Inc. ("Smart Pharmacy") for prescriptions that were not authorized and/or never provided to the patients. Moreover, Smart Pharmacy engaged in a pattern of not requiring its patients to make co-payments in an effort to ensure that the patients would continue to order the medications allowing Smart Pharmacy to bill Medicare. These false claims resulted in the Defendants improperly receiving overpayments from the Centers for Medicare and Medicaid Services (CMS) and the Defense Health Agency (DHA) and/or its predecessor, TRICARE Management Activity (TMA) through Humana Military Healthcare Services. Finally, with knowledge the claims were false when submitted, the Defendants failed to notify Medicare of the false claims and resulting overpayments, or to return such overpayments.

3. Relator brings this action on behalf of the United States and the State of Florida pursuant to the "qui tam" provisions of the Acts. Those provisions allow and empower individuals with knowledge of violations of the Acts to file suit on behalf of the government, and to encourage individuals to do so, and provide that these individuals are to share in any resulting recovery.

4. Relator estimates that the United States and the State of Florida have sustained damages as a result of the violations alleged below in the millions of dollars, before imposition of lawful penalties, including trebling pursuant to the Acts.

## II. PARTIES

5. Relator, Amy Sanchez, is a resident of Duval County, Florida and was the assistant office manager for Smart Pharmacy. Relator started her employment with Smart Pharmacy on a temporary basis in July, 2013 and became a permanent employee in October, 2013. In or about July, 2014 she was promoted to Assistant Office Manager.

6. Defendant, Smart Pharmacy is a Florida corporation with its principle place of business in Jacksonville, Florida.

7. Defendant, Gregory Balotin is, on information and belief, an officer and/or director of Smart Pharmacy and is registered as Smart Pharmacy's chief financial officer and at all times material was acting as its agent and/or apparent agent. Thus, Smart Pharmacy is vicariously liable for the actions of Gregory Balotin.

8. Defendant, William C. Scroggins, is, on information and belief, the chief operation officer of Smart Pharmacy. Mr. Scroggins is an officer and/or director of Smart Pharmacy and at all times material was acting as its agent and/or apparent agent. Thus, Smart Pharmacy is vicariously liable for the actions of William C. Scroggins.

9. Defendant Connie Mohrman is the office manager and Relator's direct supervisor and at all times material was acting within the course and scope of her employment. Thus, Smart Pharmacy is vicariously liable for her actions.

### III.  JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 31 U.S.C. § 3732 (federal court jurisdiction for actions brought pursuant to 31 U.S.C. § 3730).

11. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Defendants each maintain their principal place of business in, and transact business, including filing the false claims alleged in this amended complaint, in this district.

### IV.  RELEVANT STATUTES AND REGULATIONS

12. The allegations in the preceding paragraphs are incorporated by reference.

13. Hereinafter, the Medicare Program, the Medicaid Program and the TRICARE program are referred to collectively as the "Government Healthcare Programs."

#### A. THE MEDICARE PROGRAM

14. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 - 1395ggg, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare Program. The Medicare Program is composed of four parts. Medicare Parts A, B, C and D.

15. The Medicare Program is administered by the Centers for Medicare and Medicaid Services ("CMS").

16. Smart Pharmacy participates in Medicare as a "provider," which means it is bound by a Medicare participation agreement and accepts Medicare's allowed charge as payment in full for all of their Medicare patients.

#### B. THE MEDICAID PROGRAM

17. The Medicaid Program, established by Title XIX of the Social Security Act, is a state-administered health insurance program jointly funded by the state participant and the

federal government.

18. In Florida, claims are submitted to Medicaid using the same method as claims submitted to Medicare.

19. The Medicaid Program is administered by the Centers for Medicare and Medicaid Services ("CMS").

### C. THE TRICARE PROGRAM

20. The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), now known as TRICARE, is a health care benefit program for armed services retirees and dependents of active duty and retired members.

21. TRICARE is managed by DHA and claims are administered in the TRICARE South region, including Florida, by Humana, a managed care organization.

22. In 1995, Humana won a contract with the federal government pursuant to its CHAMPUS/TRICARE ("TRICARE") program, which obligated Humana to enter into individual network agreements with numerous healthcare providers.

23. The TRICARE reimbursement policy is modeled on the Medicare reimbursement policy. *See* 10 U.S.C. 1079 (h) and 1079(j)(2).

24. The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et. seq.* makes it unlawful to commit any act with respect to a drug that causes the drug to become misbranded, if such act was done while such article was held for sale and after its shipment into interstate commerce. 21 U.S.C. § 331(k).

25. Dispensing a prescription drug without a prescription from a practitioner licensed by law to administer such drug is an act that results in the drug being misbranded while held for sale. 21 U.S.C. § 353(b)(1).

26. Under the FDCA, a "drug" is defined in relevant part as: any article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and any article (other than food) intended to affect the structure or any function of the body of man or other animals. 21 U.S.C. § 321(g)(1)(B) and (C).

27. Under the FDCA, a prescription drug was, among other things, a drug intended for use by man which, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or a drug which was limited by an approved application under 21 U.S.C. § 355 to use under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(1).

28. Dispensing a drug in a formulation and strength which has not been prescribed by a practitioner licensed by law to administer the drug, while the drug was held for sale and after the drug or its components had been shipped in interstate commerce, results in the drug being misbranded while held for sale, a violation of 21 U.S.C. §§ 331(k), 333(a)(2), and 353(b)(1).

## V. FURTHER ALLEGATIONS COMMON TO ALL COUNTS

29. Relator, Amy Sanchez was the assistant office manager and has particularized inside information as to how the Defendants engage in schemes designed to defraud the Government Healthcare Programs.

30. Medicare requires that providers reimburse them for prescriptions that are not provided to the patients. However, Smart Pharmacy had a policy instituted by Defendant Balotin and orchestrated with the assistance of Defendant Mohrman in which all prescriptions would

be placed on auto-refill and billed to the Government Healthcare Programs regardless of whether the patient ever collected the medication. Relator is aware of countless of incidents where prescriptions were billed to Medicare but were never provided to the patient and the government health care programs were not reimbursed.

31. Medicare also requires that providers collect co-payments, if applicable from the patients. Relator was instructed by her supervisor, Defendant Mohrman that the policy was to not enforce the co-payment so long as Ms. Mohrman determined that Smart Pharmacy was making a sufficient profit from Medicare. In fact, in many instances the co-payment would exceed $450.00 and the stated policy and instructions given to Relator was to ask the patients for $15.00 and inform them that Smart Pharmacy would take care of the remaining balance.

32. Ms. Mohrman would then instruct the billing department to alter the patient account records to make it appear as if the co-payments were in fact met.

33. The billing person who was directed to make these changes was Dana Alexander, and she expressed her concerns to Relator, prior to Relator being terminated from her employment.

### VI. FALSE CLAIMS ACT VIOLATIONS

### COUNT I
### SUBMITTING FALSE CLAIMS IN VIOLATION OF THE
### FALSE CLAIMS ACT, 31 U.S.C. SECTION 3729(a)(1)(A)
### AGAINST ALL DEFENDANTS

34. The allegations contained in paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

35. As disclosed in Smart Pharmacy's corporate filings with the Florida Department of State, Defendants Balotin and Scruggins are owners, officers, and/or directors of Smart Pharmacy.

36. Defendants were at all times acting within the course and scope of their employment and corporate office. Their knowledge is therefore imputed to Smart Pharmacy, which is therefore both directly and vicariously liable for the fraudulent actions of the Defendants.

37. Defendant Balotin is the individual who devised the scheme and authorized the submission of false claims to CMS and TRICARE which information was material to the United States paying these false claims.

38. The United States paid the false claims submitted by Defendants, and has therefore sustained damages as a result of the false claims in an amount to be determined at trial. Wherefore, Relator prays for relief as set forth below.

## COUNT II
### MAKING, USING, OR CAUSING TO BE MADE OR USED, FALSE RECORDS MATERIAL TO A FALSE OR FRAUDULENT CLAIM IN VIOLATION OF THE FALSE CLAIMS ACT, 31 U.S.C. SECTION 3729(a)(1)(B) AGAINST ALL DEFENDANTS

39. The allegations contained in paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

40. Defendants were at all times acting within the course and scope of their employment and corporate office. Their knowledge is therefore imputed to Smart Pharmacy, which is therefore both directly and vicariously liable for the fraudulent actions of the Defendants.

41. Defendant Balotin is the individual who devised the scheme and authorized the submission of false claims to CMS, which information was material to the United States paying these false claims.

42. By virtue of the false or fraudulent records or statements made by the Defendants, the United States suffered damages in an amount to be determined at trial. Wherefore, Relator prays for the relief set forth below.

## COUNT III
## PRESENTING FALSE CLAIMS IN VIOLATION OF FLA. STAT. §68.082(2)(a)

43. The allegations contained in paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

44. Defendants knowingly presented false or fraudulent claims for payment or approval to the Medicaid Program of Florida.

45. Defendants were at all times acting within the course and scope of their employment and corporate office. Their knowledge is therefore imputed to Smart Pharmacy, which is therefore both directly and vicariously liable for the fraudulent actions of the defendants.

46. Defendant Balotin is the individual who devised the scheme and authorized the submission of false claims to Medicaid, which information was material to the State of Florida paying these false claims.

47. By virtue of the false or fraudulent records or statements made by the Defendants, the United States suffered damages in an amount to be determined at trial.

48. Wherefore, Relator prays for the relief set forth below.

## RELIEF REQUESTED

49. Relator, on behalf of the United States of America, the State of Florida and herself prays for judgment against the Defendants, and each of them, as follows:

    a. Damages in an amount equal to three times the amount of the damages the United States and the State of Florida have sustained as a result of the Defendants' unlawful conduct;

    b.    Civil monetary penalties for each false and fraudulent claim submitted to the United States or the State of Florida;

    c.    A permanent injunction, enjoining the Defendants from violating the federal False Claims Act;

    d.    Relator's attorneys' fees and costs;

    e.    An order awarding the Relator the maximum award allowed by the False Claims Act; and

    f.    For such further relief as the Court may deem proper and just.

## CLAIM OF RIGHT FOR TRIAL BY JURY

50.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury for all matters so triable.

DATED this 25th day of November, 2014.

> FREIDIN, DOBRINSKY, BROWN & ROSENBLUM
> *Counsel for Plaintiff/Relator*
> 2 South Biscayne Boulevard, Suite 3100
> Miami, Florida 33131
> Telephone: (305) 371-3666
> Facsimile: (305) 371-6725
>
> By _____
> Manuel L. Dobrinsky, Esq.
> Florida Bar No. 0775525
> mdobrinsky@fdlaw.net